IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS SHELTON, | : | No.  4:06-cv-2188 |
| | : | |
| Plaintiff, | : | Judge Jones |
| | : | |
| v. | : | |
| | : | |
| B.G. MALEWSKI, DR. STERLING, | : | |
| DONNA JONES, R.N., | : | |
| DR. KOZEROSKI, RON SLIUKA, | : | |
| MAJOR MILLER, and | : | |
| SUPERINTENDENT R. SHANNON, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM AND ORDER

### April 12, 2007

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is Defendants' Motion to Dismiss the Complaint

("the Motion")(doc. 16) filed on January 26, 2007 by Defendants Barbara G.

Malewski, Donna Jones, Major Joseph Miller, Deputy Lamas and Robert Shannon

(collectively "moving Defendants").

For the following reasons, the Motion shall be denied in part and granted in

part.

**PROCEDURAL HISTORY**:

Plaintiff Thomas Shelton, ("Plaintiff" or "Shelton"), a former inmate confined at the State Correctional Facility at Frackville, Pennsylvania ("SCI-Frackville") commenced the instant action by filing a complaint (doc. 1) with this Court on November 8, 2006 against the following named Defendants: Robert Shannon, the Superintendent of SCI-Frackville, Barbara Malewski, the Corrections Health Care Administrator ("CHCA") of SCI-Frackville, Joseph Miller, Major of Guards at SCI-Frackville, Deputy Lamas, Deputy of Centralized Services at SCI-Frackville, Donna Jones, Acting Corrections Health Care Administrator ("ACHCA") of SCI-Frackville, Dr. Sterling, resident physician at SCI-Frackville, Dr. Kozeroski, Oncologist at SCI-Graterford, and Ron Sliuka, a contracted Physician's Assistant.

The moving Defendants filed the instant Motion on January 26, 2007. The Motion has been fully briefed by the parties and is therefore ripe for our review.

**<u>STANDARD OF REVIEW</u>**:

In considering a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), a court must accept the veracity of a plaintiff's allegations. <u>See</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>see</u> <u>also</u> <u>White v. Napoleon</u>, 897 F.2d 103, 106 (3d Cir. 1990). In <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996), our Court of Appeals for the Third Circuit added that in considering a motion to dismiss based on a failure to

state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims."  Furthermore, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>see</u> <u>also</u> <u>District Council 47 v. Bradley</u>, 795 F.2d3 310 (3d Cir. 1986).

**<u>FACTUAL BACKGROUND</u>:**

In September 2005, Shelton underwent a prostate specific antigen ("PSA") test and his resulting PSA score was six.  (Complaint, ¶¶1-2).  On November 3, 2005, Shelton was sent to Mount Hope Medical Center for further evaluation.  (Complaint, ¶4).  Shelton was seen by Dr. Pujara, who ordered that Shelton undergo a prostate biopsy.  (Complaint, ¶5).  The biopsy was cancelled because Shelton's correctional officer escort was approximately three hours late for the appointment.  (Complaint, ¶7).  On January 17, 2006, a prostate biopsy was finally conducted by Dr. Pujara at the Mount Hope Medical Center.  (Complaint, ¶8).  After the biopsy, Plaintiff was seen by Dr. Sterling, who informed Plaintiff that the biopsy revealed cancer with a "Gleason system" grading score of seven.  (Complaint, ¶10).

From January through February of 2006, Plaintiff signed up for sick call several times in relation to his condition.  Plaintiff alleges that each time he met with Defendant Sliuka, a physician's assistant, who yelled and cursed at Plaintiff and dismissed Plaintiff's complaints of discomfort and pain as meritless.  Plaintiff alleges that Defendant Sliuka would refuse to sign Plaintiff up for doctor sick call, thereby preventing Plaintiff from speaking directly with a doctor.  (Complaint, ¶¶12-13).

On February 24, 2006, Plaintiff sent a letter to the Deputy of Centralized Services, Deputy Lamas, to complain of the treatment he received.  Plaintiff alleges that the letter was forwarded to Defendant CHCA Malewski. (Complaint, ¶¶ 14-15).  On March 27, 2006, Defendant Malewski responded to Plaintiff's letter. (Complaint, ¶16).

In March 2006, Plaintiff was escorted to Mount Hope Medical Center for an appointment with Dr. Pujara.  During this appointment, Plaintiff elected to undergo radiation therapy as a course of treatment.  (Complaint, ¶¶17-19).  Dr. Pujara allegedly ordered, in preparation for the radiation therapy, three hormone shots, a CT scan, a bone scan, and a new PSA test.  (Complaint, ¶22).  That same month, Plaintiff met with Dr. Sterling and informed him of his decision to undergo radiation therapy.  (Complaint, ¶23).  Plaintiff alleges that Defendant Malewski ordered

4

Plaintiff's bone scan and PSA test but denied the hormone shots ordered by Dr. Pujara. (Complaint, ¶25). The findings of the bone scan performed on April 7, 2006 revealed that the cancer had not metastasized. (Complaint, ¶27).

From the beginning of April through April 21, 2006, Plaintiff signed up for sick call and was allegedly treated with indifference by Defendant Sliuka, who denied Shelton the opportunity to see the doctor. (Complaint, ¶¶28-29). On July 24, 2006, Shelton reported these incidents with Defendant Malewski and was permitted to see an on-call doctor on July 26, 2006. The on-call doctor assured Plaintiff that he was scheduled for a CT scan and radiation therapy. (Complaint, ¶¶30-31).

In August 2006, Shelton allegedly suffered a breakdown and was prescribed psychotropic medications in addition to an additional PSA test. (Complaint, ¶¶32-34). The score had allegedly increased to nineteen, eliminating radical prostatectomy as an option if the cancer returned after radiation therapy. (Complaint, ¶¶35-36).

On August 9, 2006, a teleconference was held between Defendants Dr. Sterling and Dr. Kozeroski, in which Dr. Kozeroski allegedly ignored Shelton's election to undergo radiation, stopped Dr. Pujara's treatment, and unilaterally ordered that no treatment be given or discussed with Plaintiff. (Complaint, ¶¶37-

5

39).  That same month, Shelton stopped Defendant Miller on the walk way and

informed him that he had been diagnosed with prostate cancer in February and had

not received any treatment.  Defendant Miller allegedly instructed Shelton to put this

in writing and send it to him.  (Complaint, ¶40).  Shelton sent the letter to Defendant

Miller on August 22, 2006.  (Complaint, ¶44).

The previous day, August 21, 2006, Plaintiff was once again seen by Dr.

Pujara at the Mount Hope Medical Center.  Dr. Pujara informed Plaintiff that due to

the lapse of time since the biopsy, the cancer may have spread to other parts of his

body.  (Complaint, ¶¶41-42).

Following this appointment, Plaintiff filed inmate grievance 161630 for lack

fo prescribed medical treatment.  (Complaint,, ¶43).  Defendant ACHCA Jones

reviewed Shelton's medical record and denied the grievance. (Complaint, ¶¶46-49).

Shelton appealed the response on September 2, 2006 to Defendant Superintendent

Shannon, who denied the Plaintiff's appeal on September 7, 2006.  (Complaint,

¶¶50-51).  On September 13, 2006, Plaintiff appealed Defendant Shannon's denial

of the appeal of grievance 161630.  (Complaint, ¶53).

On September 25, 2006, a teleconference was held among Dr. Sterling, Dr.

Kozeroski and Plaintiff.  Dr. Kozeroski allegedly explained to Plaintiff that he had

"chan[g]ed his mind" and wished to discuss treatment options with Plaintiff.

(Complaint, ¶¶54-55).  Plaintiff informed the doctors that he had already discussed treatment options with Dr. Pujara and had selected radiation therapy and a possible radical prostatectomy if the cancer should spread.  (Complaint, ¶57).  Dr. Kozeroski informed Shelton that a radical prostatectomy after radiation was no longer an option due to the cancer's growth.  (Complaint, ¶58).

A follow-up appointment was scheduled and took place on October 12, 2006, during which Shelton told Dr. Sterling that he had selected radiation therapy. Another follow-up was scheduled to occur in two weeks.  (Complaint, ¶60).  On October 26, 2006, Shelton met with Dr. Sterling and allegedly reviewed Shelton's medical record and found Dr. Pujara's treatment prescription.  Dr. Sterling allegedly stated "this is a problem," ended the consultation, and left the room. (Complaint, ¶61).  As of November 5, 2006, Shelton allegedly had not received treatment.  (Complaint, ¶62).

**DISCUSSION**:

The moving Defendants move the Court to dismiss the complaint as against them because the Defendant has not established an Eight Amendment violation as it pertains to them.  The moving Defendants further submit that they are shielded from Plaintiff's state law claims against them by state sovereign immunity.

**A.     Eighth Amendment Claim**

7

To succeed on an Eighth Amendment claim for lack of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence a deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97 (1976).   The determination of whether a medical need is "serious" is an objective one undertaken by the Court.  As conceded by the moving Defendants and obviously recognized by this Court, prostate cancer is a serious medical problem. See Jackson v. Fauver, 334 F. Supp. 2d 697, 710 (D.N.J. 2004)("[t]here is no doubt that prostate cancer is a serious medical problem").

The determination of whether a defendant acted with "deliberate indifference" is a subjective one.  "Deliberate indifference requires the official to have knowledge of a substantial risk of serious harm but disregarded the risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 842 (1994).  Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.  Where a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence.  See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d

Cir. 1993).  It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation.  See id.  The Court of Appeals for the Third Circuit in Durmer added that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff.  However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented.  See id.

### Superintendent Shannon

The complaint describes Superintendent Shannon as being responsible for the overall operation of SCI-Frackville.  Superintendent Shannon is not alleged to be part of the prison's medical staff, and is clearly a non-medical prison official.  In the complaint, Shelton alleges that Superintendent Shannon denied the appeal of the grievance response, and that he knew or should have known about the serious medical needs of the Plaintiff, including "the nine (9) month time span since being diagnosed with the serious illness; the plaintiff's right to treatment; and the fact that no treatment was being administered."  (Complaint, ¶¶51-52).  Plaintiff essentially alleges that Superintendent Shannon knew of Shelton's diagnosis and knew that he had received no treatment in the nine month time frame, yet still denied the

grievance appeal.  Based upon Plaintiff's allegations, we find that he has sufficiently stated an Eighth Amendment claim against Superintendent Shannon, and the Motion will be denied as to this Defendant.

### Deputy Lamas and Major Miller

Similarly to Superintendent Shannon, Deputy Lamas, Deputy of Centralized Services, and Major Miller, Major of Guards, are non-medical prison officials.  The complaint alleges that Plaintiff sent a letter to Deputy Lamas on February 24, 2006, "complaining about the bad treatment of her staff towards plaintiff and his serious medical needs."  Plaintiff infers from Defendant Malewski's response to him dated March 27, 2006 that Deputy Lamas had forwarded the letter to Defendant Malewski.  (Complaint, ¶¶14-16).  The complaint contains no further allegations regarding Deputy Lamas.  With respect to Major Miller, the complaint alleges that in August 2006, Plaintiff approached Major Miller and explained to him that he had been diagnosed with prostate cancer in February 2006 and had yet to receive treatment.  In response, Plaintiff alleges that Major Miller advised him to put everything in writing and sent it to him in a letter, which Plaintiff did on August 22, 2006.  Plaintiff alleges that Major Miller did not act on the information provided to him in the letter. (Complaint, ¶¶40, 44-45).

We find that Plaintiff has sufficiently pled facts to proceed on an Eighth

Amendment claim against Deputy Lamas and Major Miller. Plaintiff's complaint alleges that Major Miller was aware of the Plaintiff's serious medical needs and took *no* action in response to this knowledge. Likewise, the complaint alleges that Deputy Lamas was made aware of Plaintiff's serious medical needs. While Plaintiff infers that Deputy Lamas forwarded his letter to Defendant Malewski, over a month elapsed between the Plaintiff's letter to Lamas and Malewski's response to Plaintiff. When dealing with a serious medical condition such as cancer, a condition that spreads and grows, we find that Plaintiff has pled sufficient facts to establish deliberate indifference, so that the claims against Deputy Lamas may proceed. Accordingly, the Motion shall be denied with respect to Deputy Lamas and Major Miller.

### CHCA Malewski and ACHCA Jones

Both Defendants Malewski and Jones are employed at SCI-Frackville as health care coordinators. Defendants argue that they "cannot be held deliberately indifferent where as here, Shelton was receiving treatment and review by doctors." (Rec. Doc. 17 at 11). This argument is clearly without merit because Shelton *was not* receiving treatment by doctors. All Shelton had received during the nine month span between diagnosis and the filing of this action were PSA tests and a bone scan. He never received radiation or any other course of therapy designed to

combat the prostate cancer.  Accordingly, this argument is disingenuous and profoundly unmeritorious.

The complaint alleges that Defendant Malewski denied the CT scan and hormone shots prescribed by Dr. Pujara in anticipation of Plaintiff's impending radiation therapy.  (Complaint, ¶25).  The complaint also alleges that Defendant Jones reviewed the Plaintiff's entire medical record when considering his grievance that he had not received proper medical treatment and thereafter denied his grievance.  (Complaint, ¶46-49).  The Plaintiff has clearly articulated sufficient factual allegations to support and Eighth Amendment claim against these Defendants.  Accordingly, the Motion shall be denied with respect to them.

### B.     State Law Claims

In addition to his constitutional claim, Plaintiff interposes a Pennsylvania state law claim of gross negligence pursuant to 42 Pa. Const. Stat. § 8527 within his complaint.  The moving Defendants argue that they are immune from such claims pursuant to Pennsylvania state sovereign immunity principles.

Pursuant to the Pennsylvania Constitution, "suits may be brought against the Commonwealth in such manner, in such courts an din such case as the legislature may by law direct."  Pa. Const. Art. I, § 11.  The Pennsylvania legislature has provided "that the Commonwealth, and its officials and employees acting within the

12

scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."  1 Pa. Const. Stat. § 2310.  The Commonwealth has statutorily waived immunity in nine categories of negligence cases, including medical-professional liability.  See 42 Pa. Const. Stat. § 8522(b).

Defendants submit that they are corrections employees who do not provide medical treatment or determine the proper treatment to be offered, and accordingly, the medical-professional liability exception to sovereign immunity does not apply. While we find this argument to be availing as it pertains to the above-referenced *non-medical* prison officials - Superintendent Shannon, Deputy Lamas and Major Miller - the same does not obtain as it relates to CHCA Malewski and ACHCA Jones. See Robus v. Pa. Dep't of Corr., 2006 U.S. Dist. LEXIS 49943, *33-34 (E.D. Pa. 2006)(dismissing a prisoner's negligence claim against the institution superintendent because the superintendent is not a health-care employee under 42 Pa. Const. Stat. § 8522(b)).  Accordingly, we shall dismiss the Plaintiff's state law negligence claim against Superintendent Shannon, Deputy Lamas and Major Miller.

As referenced by Plaintiff, in Wareham v. Jeffes, 129 Pa. Cmwlth. 124, the Pennsylvania Commonwealth Court concluded that the Commonwealth had waived sovereign immunity pursuant to the medical-professional liability exception

13

contained in 42 Pa. Const. Stat. § 8522(b) where the conduct giving rise to the

claim was that of the Health Care Administrator of a Pennsylvania state prison.  The

Court held that the prison infirmary is designed to provide medical care and the

administrator was a health care employee whose responsibilities including providing

medical care to prisoners under physicians orders.  Id. at 143. Similarly, in Robus,

the United States District Court for the Eastern District of Pennsylvania held that

the health care administrator at SCI-Graterford was not immune from a prisoner's

negligence claim pursuant to the medical-professional liability exception of 42 Pa.

Const. Stat. § 8522(b).  See Robus v. Pa. Dep't of Corr., 2006 U.S. Dist. LEXIS

49943 at *33-34.

Accordingly, we shall decline to dismiss Plaintiff's state law negligence

claims against CHCA Malewski and ACHCA Jones[1] because they are not immune

from suit pursuant to the medical-professional liability exception to 42 Pa. Const.

Stat. § 8522(b).

**CONCLUSION**:

For the foregoing reasons, we shall deny the pending Motion with respect to

all Defendants on the Plaintiff's constitutional claims.  Plaintiff's state law

---

[1] Jones' title is that of Acting Corrections Health Care Administrator.  At this juncture, we find her title and Malewski's title to be indistinguishable, and accordingly shall decline to dismiss the Plaintiff's state law negligence claims as to her.

14

negligence claims will be dismissed as against Defendants Superintendent Shannon,

Deputy Lamas and Major Miller.  The Plaintiff's state law negligence claims against

CHCA Malewski and ACHCA Jones shall not be dismissed.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Defendants' Motion to Dismiss (doc. 16) is GRANTED in part to the

following extent:

a.      Plaintiff's state law negligence claim is DISMISSED as against

Defendants Shannon, Lamas and Miller.

2.      Defendants' Motion to Dismiss (doc. 16) is DENIED in all other

respects.


<u>s/ John E. Jones III</u>
John E. Jones III
United States District Judge